## McKinley *v.* Wainstein, Appellant.

*Negotiable instruments—Checks—Holder in due course—Burden of proof—Evidence—Admissibility.*

In an action by an endorsee of a check, where the defendant shows that the check was procured by the fraudulent act of the payee and avers that the plaintiff became the holder of the check

charged with knowledge of the fraud, the burden is upon the plaintiff to show affirmatively that he is an innocent purchaser for value.

An offer of the defendant to prove the circumstances under which the check was passed, and that it subsequently was given to the plaintiff with knowledge of its defects is admissible, and failure to allow the same, constitutes reversible error.

Argued April 19, 1920.　Appeal, No. 57, April T., 1920, by defendant, from judgment of C. P. Lawrence County, Sept. T., 1915, No. 106, on verdict for plaintiff in the case of R. C. McKinley v. L. Wainstein.　Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.　Reversed.

Assumpsit by endorsee of check against the maker. Before EMERY, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the defendant made the following offer:

Counsel for defendant proposes and now offers to prove by the witness on the stand, and other witnesses to be called, that on the date on which this check was given, namely, August 24, 1915, E. E. Hileman came to the place of business of L. Wainstein, in the Borough of Hazel Dell, and there offered to sell to defendant an automobile; that they then entered into a verbal agreement, Ed. Hileman being the party of the one part and L. Wainstein party of the other part, by which it was agreed that Hileman had a 6-cylinder Studebaker car of the 1916 model, and that it was a new car; that the defendant would buy the car and would give him a check for $550 in part payment, reserving the right to cancel the sale if he did it promptly, and that if he cancelled it the check was to be returned to him.　That immediately after making the agreement the defendant investigated some matters connected with the proposed purchase, and, among other things, learned that the said Hileman had been using the car that was the subject of the pro-

posed sale as a demonstrating car and that it was not a new car. That he at once notified Ed. Hileman that he would rescind the contract and asked him to return the check. That he also on the morning of the 25th of August, 1915, notified the bank on which the check was drawn and stopped its payment. That under the agreement between Ed. Hileman and L. Wainstein the check was cancelled, and that Hileman had check in his possession until the 27th day of August, and then, for the purpose of getting into the hands of a supposed or alleged innocent holder, he transferred the check to the plaintiff in this case. That the plaintiff in this case did not receive the check in due course of business, nor for value, and paid nothing whatever for it, and it was received by him simply for collection, and that if he collected it he was then to pay Ed. Hileman one hundred dollars and deliver him a deed for some real estate in which the consideration was four hundred and fifty dollars. It is also proposed to be shown by defendant that the automobile, which was the subject of the arrangement, was a demonstrator and had been used by Hileman for a long time prior to the arrangement; that it was not a new machine and that he never either delivered the possession or offered to deliver possession of the machine to L. Wainstein, the defendant, and never made any tender of delivery.

Objected to as incompetent, irrelevant and immaterial as affecting this plaintiff, there being nothing in the offer to show knowledge on the part of Mr. McKinley of the alleged conversations or facts as set forth in the offer.

By the Court: The objection is sustained and an exception sealed for the defendant.

Verdict for plaintiff for $654.81 and judgment thereon. Defendant appealed.

*Errors assigned* were the various rulings on evidence, the refusal of the defendant's offer (4) and in directing a verdict for the plaintiff.

*J. N. Martin,* of *Martin & Martin,* for appellant.

*Robert K. Aiken,* for appellee.

Opinion by Head, J., July 14, 1920:

The action was assumpsit by the endorsee of a check against the maker thereof. In his statement the plaintiff averred the defendant made and delivered his check to one Heilman, the payee therein named, and the latter regularly endorsed the same and delivered it to the plaintiff for value. The affidavit of defense made no denial of the execution and delivery of the check to the payee or of its endorsement by the latter and delivery to the plaintiff. The latter therefore became a holder of the check within the meaning of the statute to which we shall refer in a moment. The affidavit of defense proceeded with considerable detail to aver that the check had been procured from the maker by the payee by means of false and fraudulent representations and that, in violation of his agreement to return the same upon conditions in the affidavit specified, he had, in fraud of the defendant's rights, undertaken to negotiate the check to the plaintiff. It further averred that the latter had knowledge of the infirmity of the title in the payee and therefore took the check subject to any defense which the maker could have made as against the payee. The plaintiff then filed a counter statement specifically denying any knowledge upon his part of any transaction between the maker and the payee which resulted in the execution and delivery of the check, averred in detail how he had paid full value for the same, and thus the issue of fact to be tried was fairly defined.

Upon the trial the plaintiff took the stand and testified as to the manner in which he had received the check and in which he had paid full value for the same. The check was then offered in evidence and admitted over the objection of the defendant and the plaintiff rested.

We think it cannot be successfully denied there was a prima facie case in his favor made out.

Passing for the moment some comparatively unimportant things, the defendant was called in his own behalf and his counsel then made a written offer to prove by him the entire transaction between himself and the payee which resulted in the execution and delivery of the check; and further that the plaintiff did not receive the check in due course of business nor for value but simply for collection, etc. The offer was objected to as incompetent, irrelevant and immaterial, as affecting the plaintiff, because there was nothing in the offer to show knowledge on the part of the plaintiff of the alleged conversations or facts set forth in the offer. The objection was sustained, the offer refused, and the testimony closed. Thereupon the learned trial judge directed the jury to find a verdict in favor of the plaintiff for the amount of the check. From the judgment entered on that verdict this appeal was taken.

We think an examination of the Act of 1901, and of the decisions that have followed it, will demonstrate that the learned trial judge fell into error in refusing the defendant's offer. Section 52 of the Negotiable Instruments Act defines who is a holder in due course. Section 59 provides: "Every holder is deemed, prima facie, to be a holder in due course." This first clause of the section creates, in favor of the holder, a valuable presumption of fact and thus makes it comparatively easy for him to establish a prima facie case in his favor. But the section goes on as follows: "But when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person under whom he claims, acquired the title as holder in due course." Until something is shown impairing or invalidating the title of the person who negotiated the instrument, the plaintiff holder may with safety rest upon the presumption created by the statute in his favor. But the language last

quoted clearly points out how that presumption may be overcome and a contrary presumption created in favor of the maker, and this again is a thing of substance and value to one defending. It shifts to the plaintiff the burden of proof, theretofore resting on the defendant, and the burden is on the former then to prove that he acquired the title as holder in due course. Now it has been clearly held that if the plaintiff can discharge the burden thus cast upon him only by his own parol testimony, he being of course an interested witness, the case must go to the jury to pass upon the credibility of the witness who seeks, by his own testimony, to discharge the burden of proof cast upon him by the law. This has been distinctly declared by the Supreme Court in Bank v. Hoffman, 229 Pa. 429, to be the controlling principle which must guide the conduct of a trial under such conditions. If the facts in the record before us bring the case at bar within the purview of the principle thus declared, there is no other course for us to pursue except to hold that the learned court below fell into error in rejecting the defendant's offer to prove the facts which tended to establish that the title of the payee in the check, who negotiated the instrument, was defective.

The able counsel for the appellee appears to have been convinced that the case at bar rather was ruled by the second case of Bank v. Hoffman, 233 Pa. 390, and our own case of Catasauqua National Bank v. Miller, 60 Pa. Superior Ct. 220. The latter case clearly followed the decision in the second Bank-Hoffman case precisely because of the reason that led the Supreme Court, in that case, to a different conclusion from that reached in the earlier decision. In the case at bar we fail to find anything in the testimony of the defendant which could be said to furnish the necessary admission in support of the plaintiff's contention, the necessity of which was so clearly pointed out by the Supreme Court in the two cases referred to.

Now we think it important to observe that it was not intended by the Negotiable Instruments Act, nor has it been declared by any decision of the courts of this State, that even if the defendant establish, to the satisfaction of the jury, that his note or check had been wrongfully obtained from him by the payee therein named, he has established a defense against a subsequent holder, in due course, of that instrument. But the defendant in the present case was denied the right to prove that which, of necessity, must be the first step in any defense he could hope to make against a holder of an instrument he had issued who claimed to be a holder in due course. If he cannot satisfy the jury that something more is true than that the payee in the check, for instance, undertook to defraud him, he ultimately must fail. Before the jury can render a verdict in his favor it must be satisfied, under the evidence, after a proper submission of the case, that the plaintiff holder who seeks to recover had knowledge of the defect in the title of the person who negotiated it. The defendant, with the proof on the record which the court rejected, at once would have acquired a position certainly of some value to him, as by that proof alone he shifted the burden to the plaintiff holder; and the discharge of that burden required not merely that such holder should testify he had no knowledge of any imperfection in the title but that he should "prove" the absence of such knowledge. This necessarily means that he must establish, to the satisfaction of the trier of the fact, that such was the case. Of course if the evidence on both sides tends to establish that fact in favor of the plaintiff, then there would be nothing to submit to the jury which would warrant any other verdict except one for the plaintiff, and in such case the trial judge would be justified in directing a verdict for the plaintiff on the authority of the second Bank v. Hoffman case, supra. Even in a case like the present one, where presumably the defendant has made an offer as strong as his capacity to prove would warrant, and

where that offer does not purport ability to prove a fact
from which knowledge on the part of the plaintiff could
be properly inferred, it does not follow, that because
the case must go to the jury to pass upon the credibility
of the interested witness, the jury is to feel at liberty to
close their eyes to all of the circumstances of the case.
Proper and careful instructions on the part of the trial
judge would doubtless lead to a verdict in accordance
with the evidence and one that would satisfy the con-
science of the trial judge.  A verdict that would not
respond to these conditions should be and doubtless
would be set aside.

As the case must go back because of the basic error we
have been discussing we shall but briefly refer to one or
two other matters which are made the subjects of some
of the assignments of error.  The check was dated
August 24, 1915, at the place of business of the defend-
ant, which was not the place of residence either of the
payee in the check or of the plaintiff.  The amount of
the check was $550.  At the time the payee received the
check he was indebted to the plaintiff for the balance
of the purchase money on some real estate trans-
action in the sum of $450.  On the 27th of August he
offered the check in suit to the plaintiff in discharge of
his debt of $450 with the understanding the plaintiff
should give his check for the difference of $100.  The
plaintiff at first demurred to this but on the suggestion
of the payee that he, the plaintiff, might hold the deed
which was to close the transaction between them until
he had deposited the check and ascertained it was good,
the plaintiff accepted the check and on the same day
deposited it in his own name in his bank in New Castle.
The check was drawn on a bank in Ellwood City.  There
can be nothing in the contention that plaintiff was vis-
ited with knowledge of anything unusual in the trans-
action because, in the language of counsel, he accepted
the check three days after it was due.  In all ordinary
cases a check is and is intended to be due the moment

it is drawn. If anything were to be predicated of the fact that some one who took the check the next day was placed in the position of one who accepted a promissory note or bill of exchange after, by its terms, it had become due, then no one with safety could accept a check from the payee named therein. Section 186 of the act referred to provides: "A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay." It is neither averred in the pleadings nor is there a scintilla of proof to establish that any loss accrued to the maker of the check by any alleged delay in its presentation to the bank on which it was drawn. In Rosenbaum v. Hazard, 233 Pa. 206, Mr. Justice POTTER, speaking for the court, after citing the provision just quoted, says: "A fair inference to be drawn from this language is that, if the drawer has suffered no loss by the delay, he will not be discharged." It is also true that although the check was deposited by the plaintiff in his bank at New Castle on the 27th day of August, it was not actually presented to the drawee, the bank at Ellwood City, until the 30th day of August because, as the endorsements on it show, it was sent from the New Castle bank in which it was deposited to its correspondent in Pittsburgh and by the latter returned again to its own correspondent in Ellwood City. There is nothing in the record to show that this was other than the ordinary usage of the trade or business and consequently there was nothing that gave to the defendant any status to make complaint on this score. Section 193 of the act provides: "In determining what is a reasonable time or an unreasonable time, regard is to be had to the nature of the instrument, the usage of trade or business with respect to such instrument and the facts of the particular case." From these considerations it becomes apparent that in a proper trial of the case under the pleadings there is no material

question of delay and a discussion of that question would necessarily be irrelevant.

There is one further assignment that should be noted. The defendant sought to elicit from the plaintiff on cross-examination something to support a contention that the plaintiff had brought this action against the maker, rather than against the endorser, at the solicitation of the latter because the endorser had indemnified, or offered to indemnify him against loss in case he failed to recover in an action against the maker. Assuming for the moment that to be the fact, we can discover no relevance it could have in determining the real issues involved. When the check was not paid, because payment had been stopped by the maker, the endorsee, the present plaintiff, had a cause of action either against the maker or against the endorser. He could sue either at his pleasure. If he could establish that he was a holder in due course, he was within his legal right in bringing an action against either maker or endorser and if he failed to recover in one he could with propriety pursue the other. Just what induced him to decide to first press his action against the maker we believe to be of no consequence and that the introduction into the trial of evidence on that subject could not reasonably have any other effect than to mislead the jury as to the real question to be determined by them.

For the reasons given the judgment must be reversed and the cause be tried again according to the lines laid down in this opinion.

Judgment reversed and a venire facias de novo awarded.